**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

--------------------------------------------------------x

UNITED STATES OF AMERICA,

        v.

TAIYYIB ALI MUNIR,

       *Defendant.*

--------------------------------------------------------x

| : | Defendant Taiyyib Ali Munir's |
| : | Memorandum re Sentencing |
| : | |
| : | Hearing Date:  January 7, 2013 |
| : | |
| : | [Under Seal] |
| : | |
| : | Case No. CR 12-648-JBW |
| : | |
| : | Hon. Jack B. Weinstein |

# TABLE OF CONTENTS

DEFENDANT   TAIYYIB   ALI   MUNIR'S   MEMORANDUM   RE
SENTENCING.................................................................................1

I.    INTRODUCTION............................................................................1

II.   SUMMARY OF THE INFORMATION AND PLEA AGREEMENT ........3

III.  FEDERAL SENTENCING LAW AND APPLICABLE PRINCIPLES.......3

IV.   THE   SENTENCING   GUIDELINES   AND   THE   PRESENTENCE
REPORT.......................................................................................6

    A.   Based Upon the Plea Agreement and the Stipulated Facts, Mr. Munir
Should Have a Total Adjusted Offense Level of Six............................6

    B.   The Presentence Report Calculations and Recommendations .............7

V.    THE SECTION 3553(a) FACTORS AS APPLIED TO MR. MUNIR.........8

    A.   Mr. Munir's History and Personal Characteristics .............................8

    B.   The Nature and Circumstances of the Offense...................................16

    C.   Purposes of Sentencing .................................................................17

VI.   SUGGESTED REVISIONS / OBJECTIONS TO THE PSR....................20

VII.  CONCLUSION.............................................................................25

CERTIFICATE OF SERVICE..................................................................26

## DEFENDANT TAIYYIB ALI MUNIR'S MEMORANDUM RE SENTENCING

### I.   INTRODUCTION

Defendant Taiyyib Ali Munir sincerely regrets his actions, his mistakes, and the fact that he committed a crime.  He erred when he agreed to provide another person with "earnings reports" ahead of their release by companies. Mr. Munir did not provide any earnings reports to anyone, he was never paid any monies, and no one traded any stocks as a result -- he never followed through with the conspiracy.  Regardless, he broke the law.

Mr. Munir has pleaded guilty and accepted responsibility for committing a felony.  He has already paid a price for his error and will continue to bear the shame of this illegal conduct and resulting conviction.  He has been convicted of a felony.  He spent nearly a month in a federal prison.  He has spent more than four and one-half months in 24-hour home detention with electronic monitoring.  Because of his conduct and his resulting conviction, his longtime girlfriend left him after which he has been living utterly alone on home detention here in New York where he knows no one.  He has had weeks and months to think through his conduct.  It has been a life-changing experience.

The parties' Plea Agreement anticipated that the final guideline would be a level 6 because there are no gains or loss associated with the offense conduct

and the base level for an insider trading case is level 8.  The presentence report[1]

("PSR") mirrors this same analysis and finds that the final level is level 6, which

provides the Court with full discretion in sentencing Mr. Munir.  Under the

advisory guidelines, this Court can sentence him to prison for zero to six months,

can order him to serve up to six more months of home detention, can send him for

up to six months to a halfway house, or can put him on probation.  This Court has

seen many cases, presided over many trials, and passed sentence on many people.

We respectfully ask this Court to exercise its discretion by placing Mr.

Munir on straight probation, without any home detention or other form of

confinement or restriction.  He has been punished enough.  It is better for both

society and Mr. Munir that he begin to put together the pieces of his life and move

forward in a positive way.  If sentenced to probation, Mr. Munir intends to

voluntarily remove himself from this country (i.e. self-deport)[2], return to reside in

his mother's home in England, and seek to put his life back on the right path.

---

[1] The Probation Office released the PSR to the parties on December 20, 2012.  Mr. Munir wants to proceed forward with his sentencing hearing before expiration of the 35-day disclosure rule set forth in Federal Rule of Criminal Procedure 32(e)(2). Accordingly, Mr. Munir waives the 35-day disclosure requirement.

[2] Mr. Munir's passport was taken upon his arrest in Los Angeles and has been in one or more federal agencies' custody since that time.  On August 15, 2012, the Magistrate Judge who presided during Mr. Munir's detention hearing ordered the government to turn over Mr. Munir's passport to Pretrial Services in the Eastern District of New York.  On October 16, 2012, counsel for Mr. Munir in a letter to government counsel reminded the government of this order and the fact that the

(continued...)

## II.   SUMMARY OF THE INFORMATION AND PLEA AGREEMENT

Mr. Munir was charged in an Information with participating in an insider trading conspiracy between December 2011 and July 2012 related to his agreement to provide non-public information that was to appear in an earnings report for a company, which issues securities registered under Section 12 of the Securities Exchange Act of 1934.  (Information, Docket No. 18).  Pursuant to the Plea Agreement, Mr. Munir pleaded guilty to one count of insider trading conspiracy, in violation of 18 U.S.C. § 371, for agreeing to provide earnings reports to another in advance of their release to the public.  (Plea Agreement, Docket No. 20).  Moreover, Mr. Munir agreed not to file or interpose any claim or to assist others to file or interpose any claim in response to the government's Forfeiture Allegation, as set forth in the Information.   (Id.).

## III.   FEDERAL SENTENCING LAW AND APPLICABLE PRINCIPLES

As this Court well knows, since United States v. Booker, 543 U.S. 220 (2005), the Supreme Court's sentencing opinions have consistently reiterated

---

(...continued)
passport had not yet been received by Pretrial Services in this district.  Government counsel has been trying to cause other federal agencies to comply with this order from the Magistrate Judge, but as of January 2, the passport is still not in the custody of Pretrial Services in this district, as far as defense counsel knows.  It is our hope that Mr. Munir's British passport will, in fact, be in the possession of Pretrial Services in this district, or at a minimum with a local FBI agent, by January 7, 2013.

the following principle: although a district court must "give respectful consideration to the Guidelines, *Booker* permits the court to tailor the sentence in light of other statutory concerns as well." Kimbrough v. United States, 552 U.S. 85, 101 (2007) (internal quotation marks and citation omitted).  Although the "Guidelines should be the starting point and the initial benchmark," district courts may impose sentences within statutory limits based on appropriate consideration of all of the factors listed in section 3553(a), subject to appellate review for "reasonableness." Gall v. United States, 552 U.S. 38, 49-51 (2007).  Moreover, a sentencing court may determine that a Guidelines sentence should not apply "perhaps because (as the Guidelines themselves foresee) the case at hand falls outside the 'heartland' to which the Commission intends individual Guidelines to apply, U.S.S.G. § 5K2.0, perhaps because the Guidelines sentence itself fails properly to reflect § 3553(a) considerations, or perhaps because the case warrants a different sentence regardless. United States v. Carty, 520 F.3d 984, 991 (9th Cir. 2008) (en banc) (quoting Rita v. United States, 551 U.S. 338, 351 (2007)).

In determining the appropriate sentence for Mr. Munir, the Court considers the statutory sentencing factors set forth in 18 U.S.C. § 3553(a), including, but not limited to, the history and characteristics of the offender; the nature and the circumstances of the offense; the need to reflect the seriousness of the offense, promote respect for the law, provide just punishment; and afford

-4-

adequate deterrence; the applicable sentencing range under the advisory sentencing guidelines; and the need to avoid unwarranted sentencing disparity. 18 U.S.C. § 3553(a); United States v. Booker, 543 U.S. 220 (2005).

In Pepper v. United States, ___ U.S. ___, 131 S.Ct. 1229 (2011), the Supreme Court explained that, in the context of federal sentencing hearings, "'the punishment should fit the offender and not merely the crime.'" Id. at 1240 (quoting Williams v. New York, 337 U.S. 241, 247 (1949)). In Pepper, the Court reaffirmed the principle that "[p]ermitting sentencing courts to consider the widest possible breadth of information about a defendant 'ensures that the punishment will suit not merely the offense but the individual defendant.'" Id. (citing Wasman v. United States, 468 U.S. 559, 564 (1984)). Moreover, in attempting to ensure that the punishment fits the individual defendant, "a court's duty is always to sentence the defendant as he stands before the court on the day of sentencing." United States v. Bryson, 229 F.3d 425, 426 (2d Cir. 2000). Thus, in considering the defendant's "history and characteristics," the "likelihood that he will engage in future criminal conduct," "his present purposes and tendencies," and "the period of restraint and the kind of discipline that ought to be imposed upon him," the defendant's post-arrest conduct is relevant. Pepper, 131 S.Ct. at 1241-43 (citations omitted).

As set forth in detail below, applying the Section 3553(a) factors to Mr. Munir, who will appear before the Court for sentencing, should lead this Court to impose a sentence of probation.

## IV.    THE SENTENCING GUIDELINES AND THE PRESENTENCE REPORT

### A.    Based Upon the Plea Agreement and the Stipulated Facts, Mr. Munir Should Have a Total Adjusted Offense Level of Six

Pursuant to the Plea Agreement, Mr. Munir pleaded guilty to the single count Information, Insider Trading Conspiracy, in violation of 18 U.S.C. § 371. (Plea Agreement, Docket No. 20). As part of his Plea Agreement, it was anticipated that the following calculation of the appropriate Sentencing Guidelines offense level would apply:

| | |
|---|---|
| Base Offense Level, U.S.S.G. § 2B1.4(a): | 8 |
| Acceptance of Responsibility, U.S.S.G. § 3E1.1: | <u>-2</u> |
| Total Offense Level | 6 |

(Plea Agreement, Docket No. 20, at 2-3).

In the Plea Agreement, the government noted that if Mr. Munir demonstrated accepted responsibility and the two-level reduction was warranted, pursuant to U.S.S.G. § 3E1.1(a), the resulting offense level of 6 would warrant a range of imprisonment of 0 to 6 months, assuming that Mr. Munir fell within Criminal History Category I. (Plea Agreement, Docket No. 20, at 3). While the

-6-

parties acknowledged that the Court must consult the Guidelines and take them into account when sentencing Mr. Munir, the parties also acknowledged that the Court was to consider the Guidelines "together with the factors set forth in 18 U.S.C. § 3553(a)." (Plea Agreement, Docket No. 20, at 2).

**B.      The Presentence Report Calculations and Recommendations**

The Probation Office agreed with the parties' expectation of the applicable sentencing calculations and found an offense level of 8 prior to consideration of acceptance of responsibility. (PSR ¶ 14). Indeed, the Probation Office found that there was no loss or gain associated with the instant offense and Mr. Munir never received any money for the information he was to provide. (PSR ¶ 7). Based on the foregoing, the Probation Office calculated the total offense level as follows:

| | |
|---|---|
| Base Offense Level, U.S.S.G. § 2B1.4(a): | 8 |
| Acceptance of Responsibility, U.S.S.G. § 3E1.1: | <u>-2</u> |
| Total Offense Level | 6 |

(PSR ¶¶ 14-21).

The Probation Officer's "criminal records check revealed no arrests or convictions attributable to [Mr. Munir], aside from the instant offense." (PSR ¶ 22). Mr. Munir has no prior criminal history in this country, in Great Britain or elsewhere. (Letter from Taiyyib Ali Munir to the Court, dated January 2, 2013,

-7-

("Defendant's Letter"), attached as Ex. A). Given his lack of arrests or criminal convictions, the Probation Office found that Mr. Munir's "criminal history category is I." (Id. at ¶ 23). Accordingly, the Probation Office found that "[b]ased on a total offense level of 6 and a criminal history category of I, the guideline imprisonment range is 0 to 6 months." (Id. at ¶ 57).

## V. THE SECTION 3553(A) FACTORS AS APPLIED TO MR. MUNIR

As applied to Mr. Munir, the factors set forth under Section 3553(a) strongly support a sentence of probation. Indeed, as the Probation Office noted in the PSR, "[Mr. Munir] is eligible for probation per statute, 18 U.S.C. § 3561(a)." (PSR § 60). This is so "[b]ecause the minimum term in the guideline imprisonment is less than 8 months[.]" (PSR § 61). Ultimately, Mr. Munir is before the Court for sentencing on a charge of insider trading conspiracy, in violation of 18 U.S.C. § 371. We believe that Mr. Munir's personal history and characteristics, the aberrant nature of these offenses, and the complete lack of risk of further offenses support imposing a sentence of probation.

### A. Mr. Munir's History and Personal Characteristics

It is difficult to assess the weight of the mitigating factors in this matter without understanding Mr. Munir's personal history, which weighs heavily in favor of a sentence of probation. Here, Mr. Munir's history and characteristics warrant mitigation. Moreover, given the absence of gain or loss related to the

-8-

insider trading conspiracy, Mr. Munir has already served sufficient punishment for his actions. Indeed, Mr. Munir spent nearly a month in federal custody and has been on 24-hour home detention with electronic monitoring for more than four and one-half months. Specifically, home detention commenced on or about August 15, 2012, after Mr. Munir was released from custody. He was held in custody from the date of his arrest on July 20, 2012 in Los Angeles until he was released on August 15, 2012 into 24-hour home detention in New York with electronic monitoring. (PSR § 42).

As discussed above, sentencing courts are to "consider the widest possible breadth of information about a defendant" to "'ensure[] that the punishment will suit not merely the offense but the individual defendant.'" Pepper, 131 S.Ct. at 1240 (citing Wasman v. United States, 468 U.S. 559, 564 (1984)). Therefore, in considering the defendant's "history and characteristics," after Booker, a district court may give previously discouraged sentencing factors, such as age, education and vocational skills, mental and emotional conditions, employment record, and family ties and responsibilities, much more weight than the Guidelines themselves would have allowed. See United States v. Ameline, 409 F.3d 1073, 1093 (9th Cir. 2005) (en banc) (Wardlaw, J., concurring in part and dissenting in part) ("District courts now . . . have the discretion to weigh a multitude of mitigating and aggravating factors that existed at the time of

mandatory Guidelines sentencing, but were deemed 'not ordinarily relevant,' such as age, education and vocational skills, mental and emotional conditions, employment record, and family ties and responsibilities."). <u>See also United States v. Menyweather</u>, 447 F.3d 625, 634 (9th Cir. 2006).

1. <u>Mr. Munir's Personal Characteristics</u>



Mr. Munir's other sister, Tayyibah Munir ("Dr. Munir"), shares similar sentiments regarding her brother, Mr. Munir, noting that he is "lovely and quite simply just a really wonderful person." (Letter from Tayyibah Munir to the Court, Dated November 9, 2012 ("Dr. Munir Letter"), attached as Ex. B). Dr. Munir further notes that Mr. Munir "is commonly known for his loving and caring character. He is trustworthy, responsible and reliable but the core of his character is that of a genuine, honourable and empathetic human being." (Id.). Dr. Munir also notes that Mr. Munir "has always been immensely hardworking and has held down various positions of employment." (Id.). Moreover, Dr. Munir noted that Mr. Munir frequently went "out of his way for others, often at a detriment to himself." (Id.).

Mr. Munir's younger brother, Hassan Ali Munir ("Hassan"), describes similar feelings, noting that Mr. Munir "has been an integral part of [his] life and has adapted to take on the role of not only my older brother but also my best friend and at times my father." (Letter from Hassan Ali Munir to the Court, dated November 1, 2012 ("Hassan Letter"), attached as Ex. C). Hassan notes that following their parents' separation, "Ali went above and beyond to ensure that I maintained a sense of stability in my life, especially considering I had important final exams at the time." (Id.).

One of Mr. Munir's former teachers, Brendan Casey, observed that Mr. Munir "was sociable, did his work and was ambitious." (Letter from Brendan Casey to the Court, dated November 9, 2012 ("Casey Letter"), attached as Ex. D). Mr. Casey recalled Mr. Munir's time at Ashbourne College with fondness, as the groups that Mr. Munir "was in were a lot of fun to teach and the atmosphere in the school was excellent." (Id.). Mr. Casey noted that "it was a great time for the school and [Mr. Munir] was a big part of this with his sociability and ability to bring people together." (Id.). Indeed, Mr. Casey noted that a "lot of people benefited from coming into contact with [Mr. Munir's] warm-hearted character." (Id.).

A neighbor ██████████ Joe Joseph, has known Mr. Munir for more than 20 years. (Letter from Gnanapragasam "Joe" Joseph, dated October 25, 2012 ("Joe Joseph Letter"), attached as Ex. F). Mr. Munir is "polite, reliable, and honest," according to this long-time neighbor. (Id.). When this neighbor's wife was sick, Mr. Munir "went out of his way to support my family and me in any way he could. He provided emotional support for us, as well as watching over my sons when I was at work, which demonstrated how reliable and trustworthy he is. ████

-12-

██████████████████████ "His only flaw is that he is too trusting. *** I know

that Ali is a kind hearted person and I trust him unreservedly.  For Ali to be on the

wrong side of the law is very out of character for him."  (Id.).

       Mr. Joe Joseph's younger son, Samuel Joseph, noted that the "regret

and remorse he feels is clear and obvious to everyone."  (Letter from Samuel

Joseph, dated October 17, 2012 ("Samuel Joseph Letter"), attached as Ex. G).  He

also echoed what his father stated about this conduct being out of character for Mr.

Munir – this "was an uncharacteristic act and one that we are assured and are

certain will never be repeated."  (Id.).

### 2. Mr. Munir's Financial and Employment History

       Mr. Munir was raised in Surrey, England where he attended a

government-funded school until he was 16 years old, when he received a partial

scholarship to attend Ashbourne College.  (PSR ¶ 38).  Mr. Munir did well in

school and started working early in life when he established a luxury car rental

company at the age of 17 with a loan from his mother.  (Id. at ¶ 48).  In order to

repay the loan from his mother, Mr. Munir worked tirelessly to make the company

a success and eventually sold his shares of the company at a profit.

       Mr. Munir's troubles began when he invested the proceeds of the sale

of the luxury car company in a property deal with a London based property dealer.

(PSR ¶ 47).  Approximately one year after he invested his earnings, as well as

funds belonging to his father and sister, Mr. Munir learned that the property dealer stole all their money, sold the property and moved out of the country. (Id.). Mr. Munir lost everything and the entire experience left him feeling depressed and worthless. Thereafter, Mr. Munir worked a variety of jobs in order to make ends meet, including at a bakery where he was a driver from 4:00 a.m. to 10 a.m. and managing three of the stores until 6:00 p.m. (Id. at ¶ 46).

Around 2006, Mr. Munir opened a diamond trading company that he ultimately had to close in 2008 because of the recession. (PSR ¶ 45). Mr. Munir then decided to open an on-line jewelry company, which he could manage from home in order to reduce his overhead. (Id.). Mr. Munir had developed a number of relationships in the wholesale jewelry business and was able to obtain stones and merchandise on a trust basis from those wholesale jewelers. (Id.). Ultimately, however, due to further changes in the financial climate, Mr. Munir was forced to close this company. (Id.).

Two of the jewelers who entrusted diamonds and other stock to Mr. Munir, Hymie Galandauer and Shimy Galandauer, wrote to the Court, noting that Mr. Munir had "shown himself to be an impeccable and respectful young man and is trustworthy and reliable." (Letter from Hymie Galandauer and Shimy Galandauer to the Court, dated November 3, 2012 ("Galandauer Letter"), attached as Ex. E). Indeed, Messrs. Galandauer noted that they "entrusted [Mr. Munir] with handling

-14-

tens of thousands of pounds of [their] stock and he never let [them] down or gave [them] any reason not to trust him." (Id.). They were surprised to hear of the "recent, completely out of character, turn of events. However, [they] have full faith in Taiyyib Ali's character and believe he is remorseful. [They] have no qualms about vouching for the admirable character [they] know." (Id.).

In the past, Mr. Munir did not work as a stock trader in England nor did he work in the financial industry in England, but he did get involved with the wrong crowd of people. (Defendant's Letter, Ex. A). As to the future, he intends to do manual labor and other work for his brother and father in their small business that buys and rehabilitates modest residential properties, one apartment or small house at a time. Mr. Munir is skilled in fixing and repairing properties.

As his guilty plea and his letter to the Court demonstrate, Mr. Munir accepts responsibility for his actions. As he states in his letter to the Court, "I sincerely regret what I did and that I broke the law. I am writing to you today, not in an attempt to make excuses for what I have done, but to fully acknowledge my wrongful actions and the resulting consequences. *** I acted with greed in my heart, and consequence for that is forever imprinted on my mind." (Id.).

This experience has been life-altering for Mr. Munir, but it began upon his arrest with a period of deep shame and regret. While he was in custody, he was too shamed to call anyone from his family. He knew he been "raised better

-15-

than that." (Id.).  When he was released from custody and placed in home detention in New York, he established contact with his family and has been talking nearly everyday with his younger sister, Tayyibah Munir, who lives ███████████ ████████████ She has been his rock and his support during these more than four months spent alone in an apartment in New York.  She and others have spent time with him from a distance to counsel him about the direction of his life.  (Id.).

Mr. Munir lost his way in this world, but he hopes to "start back on the right path, especially with the guidance of [his] family and others who care about [him.]"  (Id.).  He is fortunate that he has family and others that care about him, and those people will be important in helping him redirect the course of his life.  He is a young man.  But he understands that it is important to live a law-abiding life.  "I want to go back to being the real me, the hard working, diligent, conscientious and law abiding man I know I am. *** I will never again allow myself to stray so far from the man my parents brought me up to be."  (Id.).

**B.    The Nature and Circumstances of the Offense**

Section 3553(a)(1) of the Sentencing Reform Act requires this Court to consider the nature and surrounding circumstances of the offense in imposing an appropriate sentence.  Pursuant to the Plea Agreement, Mr. Munir pleaded guilty to an insider trading conspiracy, in violation of 18 U.S.C. § 371.  While Mr. Munir does not dispute the allegations or contradict the statements made in support of his

-16-

guilty plea, the circumstances of the offense warrant mitigation and a sentence of probation.

Mr. Munir has admitted that he "agreed with others, essentially to engage in securities fraud by using or agreeing to use non-public material information for the purposes of purchasing and selling stock in publicly traded companies and some of that conduct occurred in the Eastern District of New York." (Docket No. 21, Oct. 15, 2012 Transcript of Change of Plea Hearing, at p. 5-6). Of particular import, however, is the fact that Mr. Munir's offense "did not result in any loss, as [Mr. Munir] conspired to provide the insider trading information to an undercover FBI agent, and the information was never actually provided." (PSR ¶ 7). Moreover, Mr. Munir "never received any money for the information he was to provide." (Id.). While the offense was serious, it is undisputed that Mr. Munir neither profited from, nor did he provide any information related to, the insider trading conspiracy. What Mr. Munir did was wrong, but it did not result in any actual harm to the financial community.

**C.    Purposes of Sentencing**

1.    Seriousness of Offense, Respect for the Law, Just Punishment

While Mr. Munir's offense was serious, the insider trading conspiracy did not result in any loss and the information Mr. Munir agreed to provide to the undercover FBI agent was never actually provided. As Mr. Munir noted, he

-17-

recognizes that his conduct was wrong, and he fully acknowledges his wrongful actions and the resulting consequences.  However, he fully regrets his actions every single day and knows that he has "no one but [himself] to blame[,]" for his actions. (Defendant's Letter, Ex A).  In addition, Mr. Munir's long-term girlfriend from England left him "because she became increasingly uncomfortable with what [he] had done." (Id.).  Thus, while the offense is indeed serious and he understands the severity of his actions, Mr. Munir respectfully requests that the Court impose a sentence of probation.

### 2.   Deterrence

#### a.   *Specific Deterrence*

There is no need for specific, individual deterrence of Mr. Munir. First, Mr. Munir has already been effectively punished for his actions.  Indeed, Mr. Munir's arrest was an "experience[] that was shocking and new to [him]."  Those "26 days in custody were a terribly frightening experience. [He] was left scared, alone and ashamed, but [he] knew that [he] had only [himself] to blame." (Id.).

In addition, Mr. Munir recognizes that part of the problem for what led him to commit the crime he did was falling in with the wrong crowd.  Accordingly, he has spent a considerable amount of time these past few months seeking a new direction and reconnecting with positive influences from past, including in particular his college professor Brendan Casey. (Id.).  As Mr. Munir notes, he

-18-

"was blinded by the desire to cut corners and advance [his] in the wrong way, and [he] made a huge error of judgment. This whole situation has completely changed [his] outlook on life." (Id.).

Accordingly, Mr. Munir would not put he and his family through this turmoil and shame again.

### b. *General Deterrence*

There is also no need to incarcerate Mr. Munir in order to support the aims of general deterrence. First, while Mr. Munir agrees that he should be punished, such punishment should be fair and not merely punishment for punishment's sake. United States v. Stern, 950 F. Supp. 2d 945, 956 (N.D. Ohio 2008) ("[R]espect for the law is promoted by punishments that are fair, . . . not those that simply punish for punishment's sake."). Mr. Munir has already experienced over four and one-half months of home detention in New York, spending most of his time alone because most of his family lives in England. Indeed, his circumstances have been particularly harsh given that he has been isolated from family and friends in a foreign country. While Mr. Munir understands that the Bureau of Prisons will not give him credit for these months spent on home detention, pursuant to 18 U.S.C. § 3585(b), he respectfully requests that this Court take his home detention into consideration when imposing the ultimate sentence in this matter.

c.    *Protection of the Public*

Mr. Munir's actions that led to the charges and guilty plea in this case revolved around an insider trading conspiracy that did not result in any loss and the information Mr. Munir agreed to provide to the undercover FBI agent was never actually provided.  As discussed above, Mr. Munir has served some time in prison and served months and months in 24-hour home detention.  His actions led to the loss of his girlfriend, who initially supported him and then left Mr. Munir because she became uncomfortable with his actions.

The public can best be protected by permitting Mr. Munir to return soon to England without spending any more time here in the United States.  There, he plans to live with his family and work for his brother in the brother's and father's small business that rehabilitates residential properties that they acquire. He also plans to finish his education.  He wants to put this whole shameful experience behind him and move back into society in a socially redeeming manner.

Accordingly, the need to protect the public from crimes by Mr. Munir can be achieved by a sentence of probation.

## VI.    SUGGESTED REVISIONS / OBJECTIONS TO THE PSR

On December 31, 2012, Mr. Munir provided the Probation Office with several suggested revisions / objections to the PSR, none of which alters the guideline analysis.   A copy of this letter is attached as Exhibit H.   Here are the

# REDACTED

REDACTED

REDACTED

# REDACTED



**VII.        CONCLUSION**

After taking into consideration the time Mr. Munir spent in federal custody as well as the more than four and one-half months of home detention he has done here in New York, Mr. Munir respectfully requests that this Court impose a straight sentence of probation.

Dated:  January 2, 2013.                    BY: _____

Pamela L. Johnston
*Admitted Pro Hac Vice*

Foley & Lardner LLP
555 South Flower Street, Suite 3500
Los Angeles, CA 90071-2411
Telephone: (213) 972-4632
Facsimile: (213) 486-0065
Email: pjohnston@foley.com
*Attorneys for Defendant Munir*

---

[3] A copy of the receipt of payment of the $100 special assessment is attached as Exhibit I.

## CERTIFICATE OF SERVICE

I hereby certify that, on January 2, 2013, a copy of **DEFENDANT TAIYYIB ALI MUNIR'S MEMORANDUM RE SENTENCING** was served by email on government counsel, Assistant U.S. Attorney Cristina Posa, and the U.S. Probation Officer assigned to this case, John Almanza. A hard copy of the sentencing memorandum will also be delivered to AUSA Cristina Posa at her office.

Dated:  January 2, 2013

FOLEY & LARDNER LLP

BY

Pamela L. Johnston

Foley & Lardner LLP
555 South Flower Street, Suite 3500
Los Angeles, CA 90071-2411
Telephone: (213) 972-4632
Facsimile: (213) 486-0065
Email: pjohnston@foley.com

*Attorneys for Defendant Munir*

# Exhibit A

January 2, 2013

The Hon. Jack B. Weinstein
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York  11201

   Re:  United States v. Munir, CR 12-648-JBW

Dear Judge Weinstein:

My name is Taiyyib Ali Munir.  I am ● years old and from ● England.
I am currently awaiting sentencing before your Honour after pleading guilty to
Conspiracy to Commit Insider Trading.  I admit that I conspired with another
person in the December 2011/January 2012 time frame to obtain and pass along,
in advance of public announcements, earnings reports of public companies.  While
I never actually obtained any earnings reports, I still recognize that my conduct
was wrong.  I sincerely regret what I did and that I broke the law.  I am writing
to you today, not in an attempt to make excuses for what I have done, but to fully
acknowledge my wrongful actions and the resulting consequences.

## My July 2012 Arrest and Resulting Time in Custody

I was arrested on the 20th of July 2012 upon my arrival in Los Angeles from
London, England.[1]  I had never been arrested before so all I experienced was
shocking and new to me.[2]  I remained in custody for 26 days until I was released in
New York on bail. These 26 days in custody were a terribly frightening experience.
I was left scared, alone and ashamed, but I knew I had only myself to blame.

While in custody, my eyes were opened to what I had become and the situation
I had created for myself. I was looking at myself and reflecting upon how I had
come to destroy myself and sink so low.  For the 26 days I was in custody, I was
too ashamed to call my parents or siblings.  I knew I had been raised better than

---

  [1] I was traveling with my then girlfriend at the time; she paid for my trip because
she wanted me to accompany her on the trip.

  [2] I have never been arrested or convicted of anything before being arrested on July
20, 2012.

2ε

that.

## My Home Detention From August - Present

I was released on bail on the 15th August 2012, and have been under 24-hour home detention / with electronic monitoring since then in an apartment in New York. I know no one here and see no one. I have spent most of this time alone because most of my family lives in England (one sister and her family live in ███████ but I have not seen them). My long-term girlfriend from England lived with me at first, but she left me a few weeks after my home detention commenced because she became increasingly uncomfortable with what I had done.

I have been isolated for these months in a foreign country in this home detention circumstance, and I have spent this time thinking about how I got here. I have regretted my actions every single day. Undeniably, I acted with greed in my heart, and the consequence for that is forever imprinted on my mind. I know that I have no one but myself to blame.

## Plans to Get My Life Back on the Right Track

I have tried to use my many hours of time alone in home detention these past months in a positive manner. While I never worked in the financial industry in England or worked as a stock trader, I recognize that part of the problem for what lead me to commit the crime I did was falling in with the wrong crowd. Accordingly, I have now broken my ties to these people. During these months alone in New York, I have spent a considerable amount of time seeking a new direction and reconnecting with positive influences from my past, including my college professor Brendan Casey. We have spoken regularly by Skype, and he has also offered his full support to get me back on the path to finish my degree at university.

I also speak to my sister Dr. Tayyibah Munir nearly everyday. She is a practicing general physician and lives ████████████████ England. She has been my rock and my support. I talk with her about various things including my plans for whenever I am permitted to return home to England, depending on the outcome of this case.

It is an aspiration of mine to continue with further education and finish my studies at university. I have looked into doing a degree at Burbeck University of London. The course would take between 24 - 30 months to complete. Burbeck offers

2

29

evening and online classes, which would give me the opportunity to work during the day to raise funds to pay for my expenses, to pay the cost of my education, and to begin to pay my debts.

I have arranged with my father and my brother to work for them at their property renovation business if I am permitted to return soon to England. In their small business, the business acquires one apartment or small house at time, demolishes the outdated portions, and then rehabilitates the property so that it can be sold. They have a small house in ███████████ England, that is currently being worked on. If I work for their business, I will do manual work on the acquired property and generally help out the business. I do not have an ownership interest in the business. I have good building, plumbing (called copper work in England), painting, plastering, and carpentry skills that I will put to a good use in this small business.

I implore you, your Honour, to please give me another chance. I was blinded by the desire to cut corners and advance my life in the wrong way, and I made a huge error of judgment. This whole situation has completely changed my outlook on life. I lost my way, but now I hope to start back on the right path, especially with the guidance of my family and others who care about me.

I want to go back to being the real me, the hard working, diligent, conscientious and law abiding man I know I am. Please allow me the opportunity to make a life for myself. I am profoundly sorry, and I will never again allow myself to stray so far from the man my parents brought me up to be.

Sincerely,

Taiyyib Ali Munir

# Exhibit B



9th November

The Hon. Jack B. Weinstein
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn
New York 11201

Dear Judge Weinstein

### Reference: United States v. Munir, CR 12-648-JBW

My name is Dr Tayyibah Munir and I am Taiyyib Ali Munir's sister. I have had the immeasurable pleasure of knowing my brother for 30 years. I am a physician, currently in employment. I am fully aware of all the charges in relation to insider trading conspiracy.

I hope I am able to communicate effectively, what a wonderful person I know my brother to be and how shockingly and completely uncharacteristic this all is. Ali is lovely and quite simply just a really wonderful person.    He is commonly known for his loving and caring character. He is trustworthy, responsible and reliable but the core of his character is that of a genuine, honourable and empathetic human being. I would do anything to take his place right now, so he would not have to go through this.

From his early school years to present day, he has selflessly ploughed efforts into helping those around him. As a child he was very likable at school and would use this position to befriend those less popular or who were being picked upon. He was awarded the great honour of being selected by the teachers in our school to be a 'Prefect'. This involved having senior responsibilities over the other pupils in the school, including monitoring lunches, corridors, new pupil induction and acting as a mentor.

He was a hardworking student and excelled academically in his GCSE and A – Level examination. He had a great hope of furthering his education but due to a number of factors, including the separation of our parents, he was not able to fully realise his potential. However is now hoping to amend this.

Ali has always been immensely hardworking and has held down various positions of employment.  The earliest being at aged 10 when he worked as a

32

paperboy. As he got older he maintained a close relationship with the elderly couple who ran the local convenience store. The husband developed liver failure and was taken into hospital and Mrs. Patel was petrified about being left alone. For 2 weeks Ali slept on her cramped sofa, to give her peace of mind, so that she felt 'protected'. He stayed with her until her husband returned despite not knowing when that might have been.

He frequently goes out of his way for others, often at a detriment to himself. For years he would travel 100 miles to pick me upon a Friday and drop me off at university on Sundays, his concern being I would often have to travel late and have lots of heavy books. Bearing in mind my medial degree was 6 years long, this was quite a commitment. This is typical of Ali to put the needs and wants of others before his own comfort.



He takes great pleasure in helping those around him and bringing happiness to others. There are so many good acts and deeds that Ali has done, that I would need reams of paper to tell you of them all. He is such a wonderful brother, son, uncle and friend.

We are all aware that fact remains Ali has been charged with this offence. However, I cannot stress enough how totally and utterly out of character this is for him. My brother has led a simple life. His room at home is very basic and he is not ostentatious in any way. He does not live a lavish life. He still lives at home with his mother, still does not have a car and I still pay his cell phone bills and lend him money, as do my parents.



I know he feels great regret and an immensely huge amount of remorse about what has happened. A lot of tears have been shed by him and the time spent in federal jail and now these many solitary months with no family or friends, under house arrest have given him a great deal of time to ponder over the situation. He is adamant this will change his life for the better and has plans to gain employment and study at Birbeck College in the evenings and further his

education to obtain a degree. He wishes to start his life a fresh and I beg that you allow him to go forth in his life.

He has truly ashamed and apologetic over letting himself down and everyone around him. He has not been in trouble with the law prior to this first time offence. Please allow him to return to England, whereby I have the utmost confidence he will be a changed person and will work humbly and honestly to build a future for himself. I know my brother well and he assures us that he will never commit a crime of this nature or any other nature. We have good reason to believe him, as this is the first time he has committed any such offence. We are a hard working law abiding family and this is an unprecedented situation for Ali to be in.

I fear a prison term will negatively affect him mentally, emotionally and spiritually and having already spent almost a month in federal jail, he has experienced what life behinds bars is like and this has truly changed his outlook on life. It is like talking to a different person. He has great plans to rehabilitate his life by gaining employment and furthering his education. Please allow him this opportunity. With the support of his family, friends, colleagues and teachers, we know we can all help him in achieving his goals. I implore you to be lenient when sentencing him.

I am available at all times for any further questions or queries you may have and the sincerest thanks for taking the time to read my letter.

Yours Sincerely,

Dr Tayyibah Munir

34

# Exhibit C



The Hon. Jack B. Weinstein

United States District Court

Eastern District of New York

225 Cadman Plaza East

Brooklyn, New York  11201

Dear Judge Weinstein

Reference: The Case of United States v. Munir, CR 12-648-JBW (insider trading conspiracy).

My name is Hassan Ali Munir. I am ● years old and the younger brother of Tayyib Ali Munir (who we call Ali).  My brother has been an integral part of my life and has adapted to take on the role of not only my older brother but also my best friend and at times my father.

As a teenager, ████████████████████████████ Although all my siblings were greatly affected by this, Ali went above and beyond to ensure that I maintained a sense of stability in my life, especially considering I had important final exams at the time.  My parents were often working late and Ali was always there to ensure I was given my meals on time.  He would comfort me when I was feeling down and would help me revise and do my homework.  He would also ensure I was getting to school on time.



Ali has held down many jobs.  He has lifted potato sacks, worked in a car business and everything in between.  During his teens he worked at a nursing home for the elderly and

and attentively take care of them.  He also worked hard in the kitchens, cleaning, washing, mopping and preparing food.  He would start early with the breakfast and finish late after dinner.  He never complained and always showed a happy and helpful attitude to everyone.

Ali is dependable, self-sacrificing, caring and a loving brother and son.  He is a central figure in our family and is a rock.  Ali has always had a positive experience on my life, and has been there for me for every difficult experience I have had.  During financially difficult times he helped support me, despite having very little himself.

I beg you to consider Ali's sentence with leniency.  Ali is deeply remorseful for his actions.  I must stress this has all been completely was out of character.  Ali has never been in trouble with the law before.  Ali has had a lot of time alone, to enable him to think about his actions.  He has spent time in federal prison, the MDC and is now under house arrest and this has given him ample opportunity to reflect over what he did.  I know how sorry he is for the trouble he has caused.  Ali is deeply ashamed of his actions and is truly repentant.

Ali has spoken about further education and employment, when he is allowed to come back home, and he has a sound and strong network of close family and friends to help him with his rehabilitation back into normal life.  We are all waiting and willing to help him as he has helped us over the years.

Please do not hesitate to contact me for any further information.

Yours Sincerely,

*Munir*

Hassan Ali Munir

37

# Exhibit D

Brendan Casey
Head of Economics, Accounts and Business Studies
Ashbourne College
17 Old Court Place
London W8 4PL
United Kingdom

9 November 2012

The Hon. Jack B. Weinstein
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York  11201


Dear Judge Weinstein

### Re: Character Reference Tayyib Ali Munir – Case of United States v Munir, CR 12 -648-JBW

I write as Ali's former teacher at Ashbourne College in London where I taught him Business Studies and ICT for 2 years. I also write in full knowledge that he has accepted a plea bargain for Insider Trading Conspiracy for 0-6 months imprisonment.

The Ali I knew at Ashbourne was sociable, did his work and was ambitious. I remember these times with particular happiness because the groups Ali was in were a lot of fun to teach and the atmosphere in the school was excellent. Even now after all these years it stands out as a great time for the school and Ali was a big part of this with his sociability and ability to bring people together. A lot of people benefited from coming into contact with his warm-hearted character.

I have spoken at length with Ali twice now about his misdeeds and he has expressed his remorse and regret at what he has done. I think he can see now how stupid he has been and is determined not to get mixed up in something like this again.

Ali comes from a normal background and I see this as a morality tale. He has been mixing in high-profile circles and temptation has got the better of him. I think he can see this world for what it is now as plastic and superficial and he doesn't want anything more to do with it. All he wants now is a normal life doing normal things.

Ali is a young man who has made a terrible mistake but I think he has learnt his lesson. Under house arrest he has had plenty of time think about what he has

39.

done and I think it has brought him back to earth with a bump. I appeal for
leniency in his sentencing as I think a stiff sentence won't serve a useful purpose.
The thing that will rehabilitate him most is to get back to the UK as soon as
possible and mix again with family and friends and lead a normal life. He has
plenty of good qualities to offer the world and I think from now on he is
determined to live his life on the straight and narrow.

Yours sincerely

*Brendan Casey*

Brendan Casey

40

# Exhibit E



The Hon. Jack B. Weinstein
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn
New York 11201
3rd November 2012

20A

Dear Judge Weinstein

Reference - United States v. Munir, CR 12-648-JBW

Our names are Hymie (Chaim) Galandauer & Shimy (Simon) Galandauer. We
are partners of Osaka (UK) Limited, a Diamond and Pearls wholesalers
established in 1964. We are writing this reference in knowledge of the charge
of insider trading conspiracy.

We had the pleasure of knowing and working alongside Taiyyib Ali over a
period of 5 years. During this time he has shown himself to be an impeccable
and respectful young man and is trustworthy and reliable.

We entrusted him with handling tens of thousands of pound of our stock and
he never let us down or gave us any reason not to trust him.

We would consider him a colleague and a friend and were saddened and
surprised to hear of the recent, completely out of character, turn of events.
However we have full faith in Taiyyib Ali's character and believe he is
remorseful. We have no qualms about vouching for the admirable character
we know. We hope you will judge him with leniency.

Yours Sincerely


Hymie (Chaim) Galandauer


Shimy (Simon) Galandauer

OSAKA (UK) LIMITED
12/13 Greville street, Hatton Garden, London EC1N 8SB
Tel: 020 7242 3954    020 7405 0784    Fax: 020 7404 8200
Company Registered in England No: 7058519

42

# Exhibit F

43



25th October 2012

The Hon. Jack B. Weinstein
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Dear Judge Weinstein

Reference: **United States v. Munir, CR 12-648-JBW**

I understand that Mr Tayyib Ali Munir is due to appear before the Court in relation to a charge of insider trading conspiracy and I am supplying a character reference on his behalf.

My name is Gnanapragasam Marianayagam Joseph, although I am known as Joe. I am ● years old and I was born in ████████████████████████ ████████████ ●●● I moved from ●
████████████████████████████ and became a British Citizen. ████████████████████████
████████████████████████████████████████

Mr Tayyib Ali Munir, known to me as Ali, has been a friend of the family since approximately 1990 when he became friends with my 3 sons. Ali demonstrated exceptional maturity and wisdom from an early age. He was polite, reliable and honest, certainly someone I was pleased to accept into my home. Ali became a dedicated friend to my 3 sons and has always been a role model for them all. He was academically gifted during his school years and helped my sons with their school work whenever they needed, determined to ensure success with their education. He also helped guide them through hard times, particularly during a time of family crisis.

████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████ Fortunately, Ali recognised my hardship and although he was only a teenager himself, he went out of his way to support my family and me in any way that he could. He provided emotional support for us, as well as watching over my sons when I was at work, which demonstrated how reliable and trustworthy he is. ████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████

44

Ali is polite, hardworking and eager to please others, always placing the needs of those around him above his own. Ali's only flaw is that he is too trusting. No matter what he does, Ali always gives all of his effort and endeavours to achieve his best. He studied hard as a youngster and has been working steadily since leaving education. He is devoted to his family and always works hard to provide for them. Ali is very knowledgeable and can be relied on for sound, trustworthy advice on any matter. I know that Ali is a kind hearted person and I trust him unreservedly. For Ali to be on the wrong side of the law is very out of character for him.

Yours Sincerely,

Gnanapragasam Joseph.

45

# Exhibit G



17th October 2012

The Hon. Jack B. Weinstein
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Dear Judge Weinstein

**CASE: United States v. Munir, CR 12-648-JBW**

My name is Samuel Joseph. I was born████████ in the United Kingdom. I am currently working in

I understand that my friend Mr Tayyib Ali Munir, whom I call Ali, has been charged with insider trading conspiracy and am hereby supplying a character reference. I have known Ali since the early 90's where we met whilst playing in our local neighbourhood. Ali is a genuine, trustworthy and hard working character, which he showed from an early age when he began working in local shops in his early teens. His employers placed a great amount of trust and responsibility in him even at this early age and Ali never disappointed them.

Ali was also a well respected member of his Secondary school where he excelled in all subjects and was appointed as a Prefect. He was liked by staff and pupils at school, he had many friends and used his role as a Prefect to protect vulnerable pupils from bullying.

Despite all of Ali's commitments at this young age, he also found the time to help his friends when in need. Ali often helped me with schoolwork and my father trusted him to help steer me and my two brothers towards the right path when we were negatively influenced by peer pressure or family problems.



Y7



always polite and courteous to anyone that he meets, immediately putting them at ease. He is quite unassuming and enjoys a simple life. We often spend time doing home improvement jobs for family and friends and relaxing watching movies. No matter what Ali is doing he can be counted on to help my family and I and never asks for anything in return. I know that Ali is a good person whose main aim in life is to provide for his family and support his friends whenever he can.

The regret and remorse he feels is clear and obvious to everyone. This was an uncharacteristic act and one that we are assured and are certain will never be repeated. We are ready to help and support him, they way he has helped us all our lives. We hope that you judge him with leniency and not send this amazing friend to prison.

Yours Sincerely

Samuel Joseph

48

# Exhibit H



**FOLEY & LARDNER LLP**

ATTORNEYS AT LAW

555 SOUTH FLOWER STREET, SUITE 3500
LOS ANGELES, CA 90071-2411
213.972.4500 TEL
213.486.0065 FAX
foley.com

WRITER'S DIRECT LINE
213.972.4632
pjohnston@foley.com EMAIL

CLIENT/MATTER NUMBER
103511-0101

December 31, 2012

**CONFIDENTIAL**

**VIA E-MAIL**

John L. Almanza
U.S. Probation Officer
Eastern District of New York
147 Pierrepont Street
Brooklyn, New York  11201
John_Almanza@nyep.uscourts.gov
(347) 534-3678

Re:  Presentence Investigation Report for Taiyyib Ali Munir, *United States v. Munir*, 12-CR-648-JBW

Dear Officer Almanza:

After reviewing the Presentence Investigation Report for Taiyyib Ali Munir, dated December 20, 2012, we have the following suggested corrections and objections (highlighted in bold italics, underlined text).  The sentencing in this matter is being moved up from January 24 to **January 7, 2013**.



BOSTON            JACKSONVILLE      MILWAUKEE        SAN DIEGO            SILICON VALLEY
BRUSSELS          LOS ANGELES       NEW YORK         SAN DIEGO/DEL MAR    TALLAHASSEE
CHICAGO           MADISON           ORLANDO          SAN FRANCISCO        TAMPA
DETROIT           MIAMI             SACRAMENTO       SHANGHAI             TOKYO
                                                                         WASHINGTON, D.C.

4836-1146-9586.1

50



**FOLEY & LARDNER LLP**

December 31, 2012
Page 2

# REDACTED

4836-1146-9586.1



**FOLEY & LARDNER LLP**

December 31, 2012
Page 3

# REDACTED

52



**FOLEY & LARDNER LLP**

December 31, 2012
Page 4



   If you have any questions or concerns about these suggested revisions / and objections, please feel free to contact me at (213) 972-4632 or pjohnston@foley.com.

   Thank you for your attention to this matter.

          Sincerely,

          Pamela L. Johnston

PLJ:agp

cc:  Cristina Posa, Assistant U.S. Attorney (via e-mail: ▇▇▇▇▇▇▇)

53

4836-1146-9586.1

# Exhibit I

&XRPCourt Name: Eastern District of New York

Division: 1
Receipt Number: 465305155S
Cashier ID: riquelmo
Transaction Date: 11/20/2012
Payer Name: FOLEY AND LARDNER LLP

CRIMINAL DEBT
For: Tayyib Ali Munir
Case/Party: D-NYE-1-12-CR-000648-001
Amount:          $100.00

PAPER CHECK CONVERSION
Amt Tendered: $100.00

Total Due:        $100.00
Total Tendered: $100.00
Change Amt:        $0.00

55